**POTH CORPORATION, Appellant,**

v.

**MARBLE FALLS INDEPENDENT SCHOOL DISTRICT, et al., Appellees.**

**No. 14036.**

Court of Appeals of Texas, Austin.

June 6, 1984.

John Andrew Martin, Carrington, Coleman, Sloman, & Blumenthal, Dallas, for appellant.

James M. Vogt, Coffee, Goldston & Vogt, Austin, for appellees.

Before SHANNON, EARL W. SMITH and GAMMAGE, JJ.

SHANNON, Justice.

This is an appeal from an order sustaining a plea of privilege and pertains to Tex. Rev.Civ.Stat.Ann. art. 1995, subdivision 30 (1964).

Appellant Poth Corporation filed suit in the district court of Travis County for damages and for declaratory relief in connection with a contract it had entered into with the Marble Falls Independent School District. Poth had contracted to build a junior high school building. Appellees, Marble Falls Independent School District, its Board of Trustees, its Superintendent, and the owner of the construction site (hereinafter referred to as the "school district"), filed a plea of privilege seeking to have the cause transferred to Burnet County. Poth filed a controverting plea relying upon subdivision 4 of art. 1995 (Pamph.Supp.1984). After a bench trial, the district court of Travis County signed an order sustaining the school district's plea of privilege, and transferring the cause to Burnet County. This Court will affirm that order.

Texas Rev.Civ.Stat.Ann. art. 1995, subdivision 30 provides:

Whenever in any law authorizing or regulating any particular character of action, the venue is expressly prescribed, the suit shall be commenced in the county to which jurisdiction may be so expressly given.

The school district claimed that venue in Burnet County was mandatory because the suit was one brought under the terms of the McGregor Act, Tex.Rev.Civ.Stat.Ann. art. 5160 (1971 and Pamph.Supp.1984).

Poth sought damages and declaratory relief in connection with the contract that it had entered into with the school district. The parties contracted for the construction of a junior high school building located in Marble Falls, Burnet County. Poth claimed that the school district had wrongfully refused to pay to appellant sums due and owing under the contract. Defendants in the suit included the owner of the site, Marble Falls Independent School District, the Board of Trustees and the Superintendent of the Marble Falls Independent School District, the architect, the engineer, the soils tester, the testing laboratory, and several subcontractors. The contractor's surety, United States Fidelity & Guaranty Company, filed a plea in intervention aligning itself with the contractor.

Construction of the building was nearly complete when problems arose. After Burnet County experienced heavy floods, movements in the building's slab became evident. Cracks appeared in the slab, in the interior masonite walls, and in the block walls. Steel erection difficulties were also discovered. According to Poth's own evaluation, "the Project could rightly be described as a mess." The school district refused to make any further payments to Poth because it believed that Poth was in default on the contract. The question of default, as well as the determination of responsibility for the structural problems, is a major issue to be decided in the trial on the merits.

The district court concluded correctly that venue was mandatory in Burnet County because the lawsuit was "instituted under the provisions of [the McGregor Act]." As a result, venue was mandatory "in the county in which the project or work, or any part thereof, is situated [in this instance, Burnet County]." Tex.Rev.Civ.Stat.Ann. art. 5160, paragraph G (1971).

It is undisputed that the parties contracted for the construction of the building in Burnet County, Texas. The controversy is whether or not the lawsuit concerning that contract was "instituted under the provisions of [the McGregor Act]."

The primary emphasis of the McGregor Act is to give subcontractors, materialmen, and laborers a cause of action against a general contractor and the general contractor's surety in contracts for construction of public works, since those laborers or materialmen cannot obtain a lien against public property. *Seldon v. S & S Aggregates Co.,* 441 S.W.2d 950, 952 (Tex.Civ.App.1969, writ ref'd n.r.e.). The McGregor Act requires that a prime contractor entering into a contract with the State for the construction of any public works shall execute a payment bond for the protection of all *claimants* who supply labor and materials in the completion of the work provided for in the contract. *Seldon, supra* at 953.

Because a "claimant" (one intended to be protected by the Act) is defined in the Act as anyone who has a direct contractual relationship with a prime contractor or a subcontractor, Poth argues that a prime contractor cannot be a "claimant" under the terms of the McGregor Act. From this conclusion Poth infers that a suit by a prime contractor is not one "instituted under the provisions of [the McGregor Act]." This Court disagrees.

Despite the Act's narrow primary purpose, its scope is broader. A suit by a prime contractor may be filed pursuant to the art. 5160 provisions. In *First Hutchings-Sealy Nat. Bank v. Aetna Cas.,* 532 S.W.2d 114 (Tex.Civ.App.1975, writ ref'd n.r.e.), the general contractor had subrogated its contractual rights to the bank. The bank sued the contractor's surety and the owner of the construction site, the University of Texas System. When the contractor defaulted, the University of Texas System stopped payment to the general contractor. The University of Texas System paid the proceeds, instead, directly to the surety. The bank, by its suit, sought payment under the contract from the surety and/or the University of Texas System. The Court held that "[t]he Bank had no greater right to the disputed funds than did its assignor, the Contractor." *Id.* at 117. The Court also held that the rights of the

parties were controlled by art. 5160, paragraph E (1971).

Article 5160, paragraph E outlines the awarding authority's rights and obligations upon a termination of the contract. Paragraph E of art. 5160 provides:

> In the event any contractor, who shall have furnished the bonds provided in this Statute, shall abandon performance of his contract or the awarding authority shall lawfully terminate his right to proceed with performance thereof because of a default or defaults on his part, no further proceeds of the contract shall be payable to him unless and until all costs of completion of the work shall have been paid by him. Any balance remaining shall be payable to him or his surety as their interest may appear, as may be established by agreement or judgment of a court of competent jurisdiction.

Paragraph E encourages payment of subcontractors by the general contractor. Payment by the general contractor reduces the surety's liability thereby reducing the cost of construction bonds. Paragraph E further allows the awarding authority to pay the party (the contractor or the surety) who has paid the "costs of completion of the work," again mitigating a surety's costs. It is plain that this provision is important to the effectuation of the primary purpose of the McGregor Act.

Paragraph E of art. 5160 is to be read into a construction contract to the same extent as if it were expressly incorporated into the contract. *First Hutchings-Sealy Nat. Bank v. Aetna Cas., supra.* Accordingly, the propriety of the school district's refusal to continue payment of proceeds to Poth is governed by that provision. The school district is authorized to suspend payment of further proceeds of the contract to Poth if: (1) Poth abandons performance of the contract or (2) the school district lawfully terminated Poth's right to proceed with performance because of default or defaults by Poth. Payment may be suspended until Poth has paid all costs of completion of the work. *First Hutchings-Sealy Nat. Bank v. Aetna Cas.,*

*supra* at 117. Whether or not there exist circumstances necessary to justify payment suspension is a dispute arising under paragraph E of the McGregor Act. A determination of what "costs of completion of the work," if any, remain unpaid by Poth is also a dispute involving paragraph E, as is any controversy over the amount of any "balance remaining," and whether that balance should be paid to Poth or the surety, as determined by their respective interests. *Cf. First Hutchings-Sealy Nat. Bank v. Aetna Cas., supra.*

This Court is of the view that the lawsuit was filed to resolve a conflict controlled by paragraph E and, as such, it was "instituted under the provisions of [the McGregor Act]." Accordingly, venue is mandatory in Burnet County, "the county in which the project or work, or any part thereof, is situated." Art. 5160, paragraph G.

The order is affirmed.