# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 19-1140

———————————————

Murphy Oil Corporation

*Plaintiff  Appellant*

v.

Liberty Mutual Fire Insurance Company

*Defendant  Appellee*

——————————

Appeal from United States District Court
for the Western District of Arkansas - El Dorado

——————————

Submitted: January 15, 2020
Filed: April 21, 2020

——————————

Before BENTON, GRASZ, and STRAS, Circuit Judges.

——————————

BENTON, Circuit Judge.

Murphy Oil Corporation sold an oil refinery to Valero Refining-Meraux, LLC in 2011. Months later, a fire occurred on the property. Valero demanded indemnification from Murphy. Murphy asked Liberty Mutual Fire Insurance Company, its general commercial liability insurer, to provide a defense. Liberty Mutual refused. Murphy Oil sued Liberty Mutual for a declaratory judgment and

damages. The district court[1] granted summary judgment to Liberty Mutual. Murphy appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In 2011, by an Asset Purchase Agreement, Murphy Oil sold an oil refinery to Valero. Within a year, a fire extensively damaged it. Valero concluded that Murphy sold the refinery in a condition unsuitable for use, violating numerous representations and warranties in the Agreement. Valero demanded indemnification from Murphy under the Agreement's indemnity provision.

Murphy Oil notified Liberty Mutual of the demand letter, seeking full protection under its Commercial General Liability (CGL) insurance policy. Liberty Mutual denied any defense and payment duties, stating that the policy did not provide coverage for the claim.

Valero sued Murphy Oil in New York state court for one count of "BREACH OF CONTRACT." Valero alleged multiple breaches of the Agreement, including not meeting industry standards and good engineering practices; selling the refinery while "in violation of numerous environmental regulations and standards and while assets were not adequate for their use in the business"; and Murphy's "Retained Liabilities," including "violations of Environmental Laws," under the Agreement.

Murphy Oil requested that Liberty Mutual defend against Valero's suit. Again refusing, Liberty Mutual asserted that the CGL policy did not cover a breach of contract. Murphy sued Liberty Mutual for a declaratory judgment that it had a duty to defend. Both parties moved for summary judgment. The district court granted

---

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

summary judgment to Liberty Mutual, ruling "there is no possibility of coverage under the Policy for Valero's claims against Murphy." ***Murphy Oil Corp. v. Liberty Mutual Fire Ins. Co.***, 357 F. Supp. 3d 791, 801 (W.D. Ark. 2019).

This court reviews de novo a grant of summary judgment, considering the evidence and making all reasonable inferences most favorably to the nonmoving party. ***Nelson v. USAble Mut. Ins. Co.***, 918 F.3d 990, 993 (8th Cir. 2019). Summary judgment is proper if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." ***Torgerson v. City of Rochester***, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc), *citing* **Fed. R. Civ. P. 56(c).** "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." ***Id.***, *citing* ***Ricci v. DeStefano***, 557 U.S. 557, 586 (2009). The parties agree that Arkansas law governs the interpretation of the policy.

II.

An insurance policy is ambiguous if there is doubt or uncertainty as to the policy's meaning and it is fairly susceptible to more than one reasonable interpretation. ***Phelps v. U.S. Life Credit Life Ins. Co.***, 984 S.W.2d 425, 428 (Ark. 1998). If an insurance policy is unambiguous, its construction is a matter of law for the court. ***Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.***, 962 S.W.2d 735, 740 (Ark. 1998) (*Unigard I*). "[P]rovisions contained in a policy of insurance must be construed most strongly against the insurance company which prepared it, and if a reasonable construction may be given to the contract which would justify recovery, it would be the duty of the court to do so." ***Drummond Citizens Ins. Co. v. Sergeant***, 588 S.W.2d 419, 423 (Ark. 1979). If an exclusion is at issue, the insurer has the burden to prove that an exclusion applies. ***Ark. Farm Bureau Ins. Fed'n v. Ryman***, 831 S.W.2d 133, 135 (Ark. 1992).

Murphy Oil argues that Liberty Mutual has a duty to defend because there is a potential for coverage under the policy. "The duty to defend is broader than the duty to indemnify; the duty to defend arises when there is a possibility that the injury or damage may fall within the policy coverage." *Scottsdale Ins. Co. v. Morrowland Valley Co.*, 411 S.W.3d 184, 190 (Ark. 2012). "[I]n testing the pleadings to determine if they state a claim within the policy coverage, we resolve any doubt in favor of the insured." *Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co.*, 61 S.W.3d 807, 814 (Ark. 2001) (*Unigard II*). However, if there is "no possibility that the damage alleged in the complaint may fall within the policy coverage, there is no duty to defend." *Kolbek v. Truck Ins. Exch.*, 431 S.W.3d 900, 906 (Ark. 2014).

Arkansas follows a three-step analysis to evaluate coverage in CGL policies.

> First, we examine the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage. If it is clear that the policy was not intended to cover the claim asserted, the analysis ends there. If the claim triggers the initial grant of coverage in the insuring agreement, we next examine the various exclusions to see whether any of them preclude coverage of the present claim. . . . Exclusions sometimes have exceptions; if a particular exclusion applies, we then look to see whether any exception to that exclusion reinstates coverage.

*Columbia Ins. Grp., Inc. v. Cenark Project Mgmt. Servs., Inc.*, 491 S.W.3d 135, 138-39 (Ark. 2016), *citing* *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65, 73 (Wis. 2004).

III.

The first step is to determine whether a policy makes an initial grant of coverage. The general coverage provision of the CGL policy here says the policy applies to "property damage" caused by an "occurrence" that takes place in the "coverage territory," during the "policy period," and was unknown to the policy holder before the policy period began.

Valero's complaint has a single cause of action for breach of contract, with multiple allegations how Murphy breached the Agreement. Liberty Mutual argued in the district court that breach-of-contract claims are not covered by CGL policies under Arkansas law. The Supreme Court of Arkansas says it "is not alone in recognizing that breach-of-contract claims are not covered by CGL policies." *Columbia*, 491 S.W.3d at 141. *See also **id.**, citing **Grinnell Mut. Reins. Co. v. Lynne**, 686 N.W.2d 118, 125-26 (N.D. 2004) (stating that coverage under a CGL policy is for tort liability, not contractual liability for economic loss); **Oak Crest Constr. Co. v. Austin Mut. Ins. Co.**, 998 P.2d 1254, 1257 (Or. 2000) (holding that there can be no accident within the meaning of a CGL policy, when the "resulting damage is merely a breach of contract."); **Redevelopment Auth. of Cambria Cty. v. Int'l Ins. Co.**, 685 A.2d 581, 589 (Pa. Super. 1996) (holding that breach of contract is "not an accident or occurrence contemplated or covered by the provisions of a general liability insurance policy."); **Glens Falls Ins. Co. v. Donmac Golf Shaping Co.**, 417 S.E.2d 197, 200 (Ga. App. 1992) (holding that coverage applicable under a CGL policy is for tort liability, not for contractual liability for economic loss).

Murphy Oil counters with an Arkansas Supreme Court case that recognizes the possibility of CGL coverage for a breach-of-contract action. **U. S. Fidelity & Guar. Co. v. Cont'l Cas. Co.**, 120 S.W.3d 556, 561 (Ark. 2003) (*Fidelity*). In *Fidelity*, the court held that under the language of the policy there, the definition of "insured contract" covered the indemnification provisions of the agreements at issue. **Id.**

The district court recognized the tension between *Columbia's* holding that breach of contract is not covered by a CGL policy and *Fidelity's* recognition that a CGL policy covered a single breach-of-contract claim. ***Murphy Oil***, 357 F. Supp. 3d at 797. Murphy acknowledges, however, that the Agreement here is not an insured contract as present in *Fidelity*.

Murphy Oil argues that there is coverage because the underlying facts of the claim reference the property damage from the fire. Thus, Murphy says, the count for breach of contract is a claim for property damage, which is (possible) liability. However, even if the breach-of-contract claim involves property damage, it does not change the nature of the claim into one for covered property damage. *See **Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.***, 962 S.W.2d 735, 742-43 (Ark. 1998) (*Unigard I*). In *Unigard I*, plaintiff leased an island from a third party, agreeing to return it in the same condition as when leased. ***Id.*** at 736. After numerous oil leaks and spills during the lease, plaintiff returned the island without mentioning them. ***Id.*** at 736-37. The third party sued for breach of lease and negligence. ***Id.*** at 737.

The Arkansas Supreme Court considered, as a question of first impression, whether "damages awarded for breach of lease qualify as damages awarded 'because of' or 'on account of' 'property damage.'" ***Id.*** at 742. The court held that due to the running of the statute of limitations, plaintiff was "absolved of liability" for the property damage, noting "the insurers cannot be held liable for events for which their insured is not liable." ***Id.*** The court held that although "the facts in the underlying case involved 'property damage' it 'does not change the nature of the claim' that was asserted . . . which was a breach-of-lease claim . . ." ***Id.*** at 742-43. The court categorized the liability in the underlying case as "economic loss" to the third party from plaintiff's breach, which is "not covered by the language of the policies [plaintiff] purchased from its insurance carriers." ***Id.*** at 743.

*Unigard I* controls this case. The statute of limitations for tort liability ran before Valero filed its complaint. Before the running of the statute of limitations, Valero might have sued in tort for the property damage from the fire. Because Valero did not sue before the statute of limitations ran, like in *Unigard I*, Murphy Oil was "absolved of liability" for the underlying property damage. *Id.* at 742. *See also Unigard II*, 61 S.W.3d at 812 ("[A]llegations in the pleadings against the insured determine the insurer's duty to defend."). Like in *Unigard I*, any liability of Murphy in the underlying suit represents the "economic loss" from Murphy's breach of contract, which is not covered by the policy. Based on *Unigard I*, Murphy Oil loses on its duty-to-defend claim at step one.

IV.

Murphy insists that there is a possibility that the damage may fall within the policy coverage, stressing that this court must resolve "any doubt" in its favor. *See Scottsdale Ins. Co.*, 411 S.W.3d at 190; *Unigard II*, 61 S.W.3d at 814. Assuming there is any possibility of coverage, the second step is to examine the various exclusions to see whether "any of them" preclude coverage. *Columbia*, 491 S.W.3d at 138. The general contract liability exclusion in the CGL policy here says "This insurance does not apply to. . . property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." This exclusion specifically precludes coverage of the breach-of-contract claim at issue.

The third step is to see whether any exception to that exclusion reinstates coverage. *Columbia*, 491 S.W.3d at 139. There are two exceptions to the contractual liability exclusion here: "liability for damages: (1) That the insured would have in the absence of the contract or agreement; or (2) Assumed in a contract or agreement that is an insured contract." The parties agree that the second exception does not apply.

Murphy Oil argues that the first exception—absence of the contract—applies. Murphy believes that Valero's allegations about "Retained Liabilities" are claims that it would have in the absence of the contract. The Agreement, however, requires Murphy to indemnify Valero for damages "arising out of" misrepresentation, breach of warranty, and any Retained Liability. The Agreement makes its remedies "exclusive" for "any aspect of the transactions contemplated by this agreement, the business or the purchased assets." Indemnification for any damages from retained liabilities is thus a contractual obligation—squarely within the policy's exclusion for "damages by reason of the assumption of liability in the contract or agreement."

V.

Murphy Oil argues at length that a "customized" Alienated Premises Endorsement to the policy "expressly changed the very nature of the coverage," so that "the sale of the refinery, subsequent fire and ensuing property damage fit squarely within the newly customized coverage." Murphy contends this distinguishes its case from others interpreting CGL policies.

In the body of the CGL policy here, an alienated premises exclusion originally excluded from coverage:

> **j. Damage To Property**
>
> "Property damage" to:
> ...
> (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises.

The "ALIENATED PREMISES COVERAGE" endorsement modifies the CGL policy by saying:

-8-

Subparagraph (2) of the Damage to Property exclusion is replaced by the following:

(2) Premises you sell, give away, or abandon, if the "property damage" arises out of any part of those premises, and results from one or more hazards that were known by you, or should have reasonably been known by you, at the time the property was sold, given away, or abandoned.

The original alienated premises exclusion excludes coverage for property damage to premises that are sold. The endorsement excludes coverage for property damage to premises that are sold *if* the property damage results from a hazard that was known, or reasonably should have been known, by Murphy Oil when sold.

Murphy Oil asserts, "The general Contractual Liability Exclusion cannot supersede the specific Alienated Premises Coverage endorsement that was added to the Policy." *See **Pate v. Goyne***, 204 S.W.2d 900, 901 (Ark. 1947) ("Where there is inconsistency between general and specific provisions, the specific provisions ordinarily qualify meaning of the general provisions."). Arkansas does recognize that "[i]t would be incongruous for an insurer to plainly include a risk only to exclude it a few paragraphs later." ***Home Mut. Fire Ins. Co. v. Jones***, 977 S.W.2d 12, 16 (Ark. App. 1998). However, "[i]n seeking to harmonize different clauses of a contract, [the court] should not give effect to one to the exclusion of another. . . nor adopt an interpretation which neutralizes a provision if the various clauses can be reconciled." ***Sturgis v. Skokos***, 977 S.W.2d 217, 223 (Ark. 1998).

Arkansas courts "analyze each exclusion separately." ***S.E. Arnold & Co., Inc. v. Cincinnati Ins. Co.***, 507 S.W.3d 553, 558 (Ark. App. 2016), *citing **Am. Family Mut. Ins. Co.***, 673 N.W.2d at 73. "[T]he inapplicability of one exclusion will not reinstate coverage where another exclusion has precluded it." ***Id.*** Here, the endorsement replaces one exclusion. True, as Murphy Oil stresses, the endorsement expands coverage for property damage on sold property. However, the endorsement

-9-

does not reinstate coverage where another exclusion—the contractual liability exclusion—precludes it.  As discussed, the contractual liability exclusion precludes any possibility of coverage for Valero's breach-of-contract claim.  Contrary to Murphy's assertion that this interpretation of the CGL policy nullifies the endorsement, it harmonizes the two exclusions under Arkansas's stair-stepping approach to interpreting separate exclusions.

The district court properly ruled that there is no possibility that the policy covers the property damage alleged in the complaint, and thus there is no duty to defend.

* * * * * * *

The judgment is affirmed.

_____